UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

xLM SOLUTIONS, LLC,

Plaintiff,

v.

MECANICA SOLUTIONS, INC.,

Defendant.

_____/

Case No. 18-cv-10443

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE
REPLY BRIEF [17], DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S
REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS [15], AND DENYING
DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL
JURISDICTION [8]

I.      Introduction

Plaintiff xLM Solutions, Inc. ("xLM") initiated this action in state court on

December 12, 2017.  Dkt. No. 1, p. 26 (Pg. ID 26).  The Defendant, Mecanica

Solutions, Inc. ("Mecanica"), removed the case to this Court on February 7, 2018.

*See id.*  In its amended complaint, xLM alleges that Mecanica breached both a 2006

Finder's Fee Agreement (Count I) and a 2014 Finder's Fee Agreement (Count II).

Additionally, xLM asserts claims for unjust enrichment (Count III), breach of

fiduciary duty (Count IV), fraudulent misrepresentation regarding funds allegedly

owed under the 2014 Finder's Fee Agreement (Count V), and fraudulent

misrepresentation with respect to the Defendant's intent to perform its obligations under the Second Finder's Fee Agreement (Count VI). *See* Dkt. No. 5.

On March 14, 2018, Mecanica moved to dismiss the complaint for lack of personal jurisdiction. Dkt. No. 8. xLM responded to the motion on April 3, 2018. Dkt. No. 12. And on April 17, 2018, the Defendant replied in support of the motion. Dkt. No. 13.

The parties, however, vigorously dispute whether the Court should consider Mecanica's reply brief. First, on April 18, 2018, xLM requested that the Court strike the Defendant's reply brief, arguing that it was untimely submitted under Eastern District of Michigan Local Rule 7.1(e). Dkt. No. 15. Mecanica responded to the motion to strike on April 19, 2018. Dkt. No. 16. xLM replied in support of its motion to strike on April 24, 2018. Dkt. No. 18.

Second, Mecanica submitted on April 20, 2018 a motion for leave to file a reply brief. Dkt. No. 17. The Plaintiff responded on April 24, 2018, and Mecanica replied in support on April 26, 2018. *See* Dkt. Nos. 19, 20.

Presently before the Court is the Plaintiff's Motion to Strike the Defendant's Reply Brief in Support of the Motion to Dismiss [15], the Defendant's Motion for Leave to File a Reply Brief [17], and the Defendant's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction [8]. The Court held a hearing on these motions on June 11, 2018 at 11:00 a.m. *See* Dkt. No. 21. At the hearing, the Court

ruled on these motions from the bench. The Court DENIED the Plaintiff's Motion to Strike the Defendant's Reply Brief in Support of the Motion to Dismiss [15] and GRANTED the Defendant's Motion for Leave to File a Reply Brief in Support of its Motion to Dismiss the Complaint [17]. The Court also DENIED the Defendant's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction [8]. In this Opinion, the Court will explain its rationale.

## II.  Background

xLM is a limited liability company headquartered in Michigan. Dkt. No. 5, pp. 1–2 (Pg. ID 74–75). It offers technological support and assistance for the implementation of computer programs. Dkt. No. 12-2, p. 3 (Pg. ID 963). Mecanica is a Canadian corporation, headquartered in Quebec, Canada and it does not have a physical presence in Michigan. Dkt. No. 8, p. 8 (Pg. ID 469). It markets software licenses, with 75% of its business occurring outside of the United States and 25% taking place inside the United States. *Id.* Although Mecanica does not generally advertise in Michigan, it has sent sales emails to Michigan-based customers, including the Plaintiff. *Id.*; Dkt. No. 12-2, p. 13 (Pg. ID 973); Dkt. No. 12-23. Mecanica has also attended at least two industry conferences in Michigan. Dkt. No. 12, pp. 9, 16–17 (Pg. ID 934, 941–42); *see also* Dkt. No. 12-2, p. 13 (Pg. ID 973). While attending two such conferences, it allegedly held discussions with xLM about

various business dealings.  Dkt. No. 12, pp. 9, 16–17 (Pg. ID 934, 941–42); *see also* Dkt. No. 12-2, p. 13 (Pg. ID 973).

A.      Profit-Sharing Agreements

The parties executed two profit-sharing contracts.  First, around December 2006, the parties entered a finder's fee agreement (the "First Finder's Fee Agreement").  Dkt. No. 5, p. 2 (Pg. ID 75).  This agreement provided that xLM would, among other things, refer customers or other business to Mecanica regarding the resale of SmarTeam Annual License Charge and Product License Charge licenses.  *Id.*; *see also* Dkt. No. 12-2, p. 5 (Pg. ID 965).  In return, Mecanica promised to pay 50% of the gross profits from these referrals.  Dkt. No. 5, p. 2 (Pg. ID 75).  The contract contained a Michigan choice-of-law provision, but no forum-selection clause.  *Id.* at p. 15 (Pg. ID 88).

Mecanica and xLM negotiated the contract from afar, largely by email and phone.  Dkt. No. 12, p. 11 (Pg. ID 936).  xLM drafted the contract and signed it in Michigan.  *Id.*  Conversely, Mecanica negotiated and executed the contract from Rhode Island.  *Id.*  This agreement yielded no Michigan customers.  *Id.* at p. 12 (Pg. ID 937); Dkt. No. 8, p. 12 (Pg. ID 473).  Indeed, xLM referred just one company to Mecanica and that company was based in Canada.  *See* Dkt. No. 8, p. 12 (Pg. ID 473); Dkt. No. 12, p. 12 (Pg. ID 937); *see also* Dkt. No. 12-2, p. 5 (Pg. ID 965).  The Plaintiff twice invoiced Mecanica for money obtained from this referral, once on

July 12, 2008 and again on January 25, 2010.  Dkt. No. 12, p. 12 (Pg. ID 937); *see* Dkt. No. 12-6.

Second, the parties executed a profit-sharing agreement (the "Second Finder's Fee Agreement") in November of 2014.  Dkt. No. 5, p. 2 (Pg. ID 75).  This agreement involved xLM's referral of customers and business to Mecanica regarding Dassault products.  *Id.* at pp. 2–3 (Pg. ID 75–76).  Like the first profit-sharing agreement, this agreement was governed by Michigan law and did not contain a forum-selection clause.  *Id.* at 19 (Pg. ID 92).

xLM highlights one company it referred under this agreement, Karma Automotive.[1]  The Plaintiff contends that Mecanica provided services to Karma Automotive under the Second Finder's Fee Agreement and did so in Michigan.  Dkt. No. 12, p. 15 (Pg. ID 940).  Specifically, xLM alleges that "Karma Automotive has offices in Michigan and its Michigan employees are and have been utilizing the services and/or products provided by Mecanica Solutions to Fisker/Karma in Michigan."  Dkt. No. 12-2, p. 15 (Pg. ID 975); *see also* Dkt. No. 12, p. 15 (Pg. ID 940).  Based on business garnered from Karma Automotive between March 2015 and November 2016, Mecanica informed xLM that it owed xLM money pursuant to

---

[1]  Plaintiff notes that this company was previously called Fisker Automotive.  Dkt. No. 12, p. 14 (Pg. ID 939).

the Second Finder's Fee Agreement. Dkt. No. 12, p. 14 (Pg. ID 939). Mecanica, according to xLM, paid the amount owed for that timeframe. *Id.*

But Mecanica has allegedly failed to pay over $650,000 in fees under this second agreement, including certain fees from business related to Karma Automotive. Dkt. No. 5, p. 4 (Pg. ID 20); *see also* Dkt. No. 12-2, p. 12 (Pg. ID 972). xLM maintains that Mecanica has made false statements regarding the money generated from xLM's referrals under both profit-sharing agreements. Dkt. No. 5, pp. 4–5 (Pg. ID 20–21). In particular, xLM alleges that Mecanica representatives, while visiting Michigan, falsely represented that Mecanica has not made any post-2016 sales to Karma Automotive. Dkt. No. 12-2, p. 12 (Pg. ID 972). Mecanica also never intended to comply with the Second Finder's Fee Agreement, according to xLM. Dkt. No. 12, pp. 26–27 (Pg. ID 952–53).

B.    Support Agreements

xLM claims that the parties had several technical support agreements. *Id.* at pp. 12–13 (Pg. ID 936–37). These agreements, however, are separate from the profit-sharing contracts which underlie the causes of action in this litigation. *Id.* Yet like the profit-sharing agreements, only xLM was in Michigan during the execution and negotiation of these technical support agreements.

In November of 2007, the parties purportedly entered an agreement for technical support, whereby Mecanica would give xLM technical support for an agreed upon price. *Id.* at p. 12 (Pg. ID 937); *see also* Dkt. No. 12-7.

Then, in August 2012, the parties executed another support contract. Dkt. No. 12, p. 12 (Pg. ID 937). Unlike the first support agreement, under the second contract xLM was to provide technical support to Mecanica. *Id.* at pp. 12–13 (Pg. ID 937–38).

## III. Discussion

Plaintiff raises six claims involving the 2006 and 2014 profit-sharing agreements, and asks that the Court strike the Defendant's reply brief in support of the motion to dismiss the complaint. Dkt. No. 15. Conversely, the Defendant requests leave to file a reply brief in support of its motion to dismiss. Dkt. No. 17. The Court finds good cause to grant the Defendant's request for leave, and thus, will deny the Plaintiff's motion to strike.

Mecanica requests that the Court dismiss this action for lack of specific personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The Court is unpersuaded. Therefore, the Court will deny Mecanica's motion to dismiss for lack of personal jurisdiction.

The Court will first turn to the dispute regarding the Defendant's reply brief on the motion to dismiss.

A.      Reply Brief in Support of Motion to Dismiss the Complaint

xLM has moved to strike the Defendant's reply brief in support of the motion to dismiss, contending that the Defendant untimely filed the brief. Dkt. No. 15. By way of background, the Defendant submitted the reply brief fourteen days after the Plaintiff had submitted its responsive pleading. *See* Dkt. Nos. 12, 13. xLM protests that Mecanica was required to reply within seven days. The Court finds that the Plaintiff's motion lacks merit.

Even if Mecanica has failed to comply with Eastern District of Michigan Local Rules, the Court finds that there was no prejudice to xLM. The Defendant correctly contends that any untimely submission of the reply brief did not disadvantage xLM in its preparation for oral argument. Indeed, oral argument was still more than six weeks away when Mecanica filed its reply brief. Additionally, the Court is convinced that any failure to comply with the Local Rules happened in good faith.

Thus, the Court will deny the Plaintiff's motion to strike and will grant the Defendant's motion for leave to file a reply. The Court will therefore consider Mecanica's reply brief in resolving the motion to dismiss.

B.      Motion to Dismiss for Lack of Personal Jurisdiction

xLM must demonstrate that the Court has personal jurisdiction over Mecanica. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016)

(citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Because the Court will decide this motion on the pleadings alone, "the plaintiff's burden is 'relatively slight,' and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal[.]' " *Id.* (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). To make this *prima facie* demonstration, a plaintiff need only plead "specific facts showing that the court has jurisdiction." *Id.* (internal quotation marks omitted) (quoting *Serras*, 875 F.2d at 1214). Lastly, "[t]he pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and [this] [C]ourt should not weigh the controverting assertions of the party seeking dismissal." *Id.* (internal quotation marks omitted) (quoting *Air Prods.*, 503 F.3d at 549).

Plaintiff contends that the Court has specific, as opposed to general, jurisdiction over the Defendant. "In determining whether limited personal jurisdiction exists over a given defendant, [courts] look to both the long-arm statute of the forum state and constitutional due-process requirements." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (citing *Air Prods.*, 503 F.3d at 550). Here, "the two questions become one" as the Michigan long-arm statute "extends to the limits imposed by federal constitutional due process requirements[.]" *Id.* (internal quotation marks omitted) (quoting *AlixPartners, LLP*, 836 F.3d at 549).

The Court may exercise personal jurisdiction over Mecanica, consistent with due process, if the following conditions are met:

> If [Mecanica] purposefully availed [itself] of the privilege of acting or causing a consequence in Michigan, if the cause of action arose from [its] Michigan activities, and if [its] actions, or the consequences [it] caused, have a sufficiently substantial connection with Michigan so as to make the exercise of jurisdiction reasonable.

*Id.* (citing *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012)).

### 1.    Purposeful Availment

Contrary to Mecanica's assertions, xLM has pleaded specific facts illustrating that Mecanica has purposefully availed itself of the privilege of acting or causing a consequence in Michigan.

"Purposeful availment" has two components.  First, it "is present where the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum [s]tate[.]" *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014) (first alteration in original) (internal quotation marks omitted) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002)).  Second, it exists "where the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Id.* (internal quotation marks omitted) (quoting *Neogen Corp.*, 282 F.3d at 889).  "[T]he emphasis in the purposeful availment inquiry," the Sixth Circuit has concluded, "is whether the

defendant has engaged in some overt actions connecting the defendant with the forum state." *Id.* (internal quotation marks omitted) (quoting *Fortis Corp. Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006)). "[A] nonresident who deliberately engages in 'significant activities within a State,' " for example, or "creates 'continuing obligations between himself and residents of the forum' satisfies this requirement." *AlixPartners, LLP*, 836 F.3d at 550 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)).

xLM has made this *prima facie* showing by asserting facts about, among other things, the various contracts and correspondence between the parties over an extended time period. For instance, in *AlixPartners, LLP*, the defendant:

> purposefully availed himself of Michigan by: (1) pursuing employment through email and telephone communications with personnel in [the plaintiff's] Michigan office; (2) signing an employment agreement with a Michigan choice-of-law provision and returning it to [the plaintiff's] Michigan office; (3) attending a mandatory orientation session in Michigan; (4) communicating with his Michigan-based supervisors over the course of his employment; and (5) recruiting Michigan candidates for a position in [the plaintiff's] Michigan office.

*Id.*

Likewise, here, in connection with the parties' various contracts, xLM alleges that it frequently communicated with Mecanica, by both email and phone. Second, both profit-sharing agreements contain Michigan choice-of-law clauses. Third, the parties are alleged to have discussed—at least twice—their agreements in person and

in Michigan.[2]  Like the fourth factor in *AlixPartners, LLP*, Mecanica communicated with Michigan-based xLM, and even sent payments to Michigan to satisfy xLM's invoices and other funds owed under the various contracts.

Another similarity between *AlixPartners, LLP* and this case is the targeting of Michigan residents.  Specifically, Plaintiff contends that (1) Karma Automotive—a customer it referred to Mecanica under the Second Finder Fee's Agreement—has a Michigan office; and that (2) Mecanica provided services to Karma Automotive's Michigan office, as contemplated by the profit-sharing agreement.  xLM relatedly maintains that Mecanica advertised to Michigan-based companies and, in support of this allegation, xLM references email advertisements it has received from Mecanica. *See* Dkt. No. 12-23.

What is more, xLM pleads facts indicating that Mecanica has had "continuing obligations between [itself] and residents of [Michigan]."  *See AlixPartners, LLP*, 836 F.3d at 550 (quoting *Burger King Corp.*, 471 U.S. at 475–76).  The parties, according to xLM, have had ongoing contractual relationships for at least a decade. Indeed, xLM asserts that the parties executed two profit-sharing agreements, one in 2006 and the other in 2014.  Additionally, Plaintiff claims that the parties entered

---

[2]  Mecanica asserts that these conversations occurred in Michigan because it happened to attend industry conventions in Michigan.  But the Court must view the facts in the light most favorable to the Plaintiff, and thus, these discussions in Michigan weigh in favor of the Plaintiff.

technical support agreements in 2007 and 2012. These contractual relationships only broke down, xLM claims, around or after 2016. Therefore, "[Mecanica] knowingly created a connection with [xLM's] Michigan office that was 'intended to be ongoing in nature, as opposed to a one-shot affair." *Id.* at 551 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263–65 (6th Cir. 1996)).

In support of the motion, Mecanica vigorously argues that *Wizie.com, LLC v. Borukhin*, No. 2:14-cv-10391, 2014 WL 2743375, (E.D. Mich. June 17, 2014), is instructive. The Court will disagree.

To begin, the *Wizie.com* litigants lacked an extensive relationship. Rather, their relationship consisted of "one order for a single set of products to be used in conjunction with [a defendant's] website." *Id.* at *4. And the payment structure of their agreement, which called for continuous payments tied to a percentage of sales, did not transform this relationship into one warranting the exercise of personal jurisdiction. *Id.*

Mecanica and xLM, to the contrary, have entered several contracts regarding numerous products. For instance, the First Finder's Fee Agreement involves SmarTeam licenses, whereas the Second Finder's Fee Agreement concerns Dassault products. These profit-sharing agreements also mandate continuous payments, but the decade-long contractual relationship between xLM and Mecanica further distinguishes this case from *Wizie.com*. *See id.* at *4 (noting the "[d]efendant . . .

did not place continuous product orders over the course of several years"). In light of the above analysis, Mecanica has purposefully availed itself of the forum state.

### 2. Cause of Action and Defendant's Activities

The Plaintiff's contentions also suggest that the cause of action arose from Mecanica's Michigan-based activities.

"At a minimum, this factor is satisfied if the cause of action, of whatever type, ha[s] a substantial connection with the defendant's in-state activities." *AlixPartners, LLP*, 836 F.3d at 552 (alteration in original) (internal quotation marks omitted) (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). This element assesses "whether the causes of action were made possible by or lie in the wake of the defendant's contacts, or whether the causes of action are related to or connected with the defendant's contacts with the forum state[.]". *Id.* (quoting *Air Prods.*, 503 F.3d at 553). To be sure, "this is a lenient standard and the cause of action need not formally arise from defendant's contacts." *Id.* (internal quotation marks omitted) (quoting *Air Prods.*, 503 F.3d at 553).

As the litigants' profit-sharing agreements are core justifications for the Court's conclusion that Mecanica has purposefully availed itself of Michigan, the causes of action are linked to Mecanica's connection with the forum state. Indeed, through this litigation, xLM seeks to recoup money Mecanica has allegedly earned from Michigan-based customers (e.g. Karma Automotive) and refused to pay under

the profit-sharing agreements.  The causes of action are also linked to Michigan because Plaintiff alleges that the Defendant made false representations regarding its performance of the agreements while in Michigan (attending industry conferences).

According to the Defendant, *Communs. Network Billing v. ILD Telcomms., Inc.*, No. 17-10260, 2017 WL 3499869, at *11 (E.D. Mich. Aug. 16, 2017), suggests that xLM has not made the required *prima facie* showing of a connection between the causes of action and Michigan.  The Court is unpersuaded.  The "underlying controversy" in *Communs. Network Billing* involved "[the defendant's] alleged failure to remit the fees collected based on the call records supplied by [the plaintiff]." *Id.* at *5.  And "[t]herefore, the critical question [wa]s where [d]efendant allegedly made the decision to withhold [the plaintiff's] payments." *Id.*

Yet the dispute in this litigation centers on whether Mecanica profited from xLM's referrals and, second, whether Mecanica failed to pay 50% of the profits generated from any referrals.  Thus, the key issue on this motion is the following:  in what state or country did Mecanica secure profits from xLM's referrals?  Accepting xLM's allegations as true, as the Court must, one answer to this question is Michigan.  Notably, xLM contends that Mecanica obtained profits from the Michigan-based operations of Karma Automotive, a company which xLM referred to Mecanica.  *Communs. Network Billing*, then, is distinguishable.  Consequently,

the Court will find that xLM's causes of action have a substantial connection to Mecanica's activity in Michigan.

### 3. Reasonableness

In the last step of this three-prong analysis, a court must assess whether it is reasonable to exercise personal jurisdiction over a defendant. *MAG IAS Holdings, Inc.*, 854 F.3d at 903 (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). "When the first two prongs of [the Sixth Circuit] personal jurisdiction test are met, there is an inference of reasonableness and 'only the unusual case will not meet this third criteria.' " *Id.* at 903–04 (quoting *Air Prods.*, 503 F.3d at 554). Three considerations guide courts' evaluation of the reasonableness element: "[1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief." *Beydoun*, 768 F.3d at 506 (internal quotation marks omitted) (quoting *Asahi Metal Indus. Co. v. Super. Court of Cal.*, 480 U.S. 102, 113 (1987) (citation omitted)).

This is not the "unusual" case. First, defending this lawsuit will burden the Defendant, as it is a foreign corporation. Yet according to xLM, Mecanica has visited Michigan and has offices in several states. This burden, then, will be insufficient to overcome the presumption of reasonableness.

Second, Michigan has an interest in protecting its residents from fraud, and xLM contends that the Defendant has committed fraud. Lastly, xLM has a strong

interest in relief. The Plaintiff asserts that the Defendant has failed to pay a substantial sum owed under the profit-sharing agreements, over $650,000. Accordingly, the Court will conclude that it is reasonable to exercise personal jurisdiction over the Defendant.

## IV. Conclusion

The parties contest whether the Court should consider the Defendant's reply brief in resolving the Defendant's motion to dismiss. Dkt. No. 13. The Court finds good cause to examine the reply brief in deciding the motion. Therefore, at oral argument, the Court DENIED the Plaintiff's Motion to Strike the Defendant's Reply Brief [15] and GRANTED the Defendant's Motion for Leave to File a Reply Brief [17]. Additionally, the Defendant moved to dismiss the complaint for lack of personal jurisdiction. Dkt. No. 8. The Court finds that it has personal jurisdiction over the Defendant in this matter. Accordingly, while on the record, the Court DENIED the Defendant's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction [8].

IT IS SO ORDERED.

Dated: June 13, 2018                                   /s/Gershwin A. Drain
                                                      GERSHWIN A. DRAIN
                                                      United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 13, 2018, by electronic and/or ordinary mail.

/s/ Tanya Bankston

Deputy Clerk